# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cv-62740-BLOOM/Valle

USA ENTERTAINMENT GROUP, INC.,

    Plaintiff,

v.

CITY OF POMPANO BEACH, *et al.*,

    Defendants.

_____/

## OMNIBUS ORDER ON MOTIONS TO DISMISS AMENDED COMPLAINT

**THIS CAUSE** is before the Court upon Defendant City of Pompano Beach's Motion to Dismiss, ECF No. [30], Defendants Sheriff Scott Israel and Captain Wayne Adkins' Motion to Dismiss Plaintiff's Complaint and Motion to Strike, ECF No. [33], and Defendants Lamar Fisher and Charlotte Burrie's Motion to Dismiss, ECF No. [39] (together, the "Motions").[1] The Court has carefully reviewed the Motions, all opposing and supporting materials, the record and the applicable law, and is otherwise fully advised. For the reasons that follow, the Motions are granted, and Plaintiff's Complaint, ECF No. [1], is dismissed without prejudice.

## I. BACKGROUND

Plaintiff USA Entertainment Group, Inc. d/b/a Club Cinema ("Plaintiff" or "Club Cinema") commenced this action by filing their Complaint on November 9, 2018, asserting claims for violations of their constitutional rights pursuant to 42 U.S.C. § 1983 ("Complaint"). *See* ECF No. [1]. In the four-count Complaint, Plaintiff specifically asserts the following § 1983 claims: (1) a claim for First Amendment Retaliation asserted against Defendants City of Pompano Beach

---

[1] For ease of reference, the Court shall collectively refer to all Defendants represented in the Motions as "Defendants."

("City"), Commissioner Charlotte Burrie ("Commissioner Burrie"), and Mayor Lamar Fisher ("Mayor Fisher"); (2) a claim for First Amendment Retaliation against Defendants Sheriff Scott Israel ("Sheriff Israel") and Captain Wayne Adkins ("Captain Adkins"); (3) a claim for deprivation of equal protection rights against Defendants City, Commissioner Burrie, and Mayor Fisher; and (4) a claim for deprivation of equal protection rights against Defendants Sheriff Israel and Captain Adkins.

According to the Complaint, Plaintiff opened Club Cinema in Pompano Beach, Florida (the "Subject Property"), in 2006 to operate as a nightclub and music venue. ECF No. [1], at ¶¶ 9, 11. Since 1999, the City has contracted with the Broward Sheriff's Office ("BSO") to provide law enforcement and police services. *Id*. at ¶ 13. The Complaint alleges that at some point Commissioner Burrie contacted Plaintiff and indicated that "if Club Cinema wanted to continue in business peacefully, Club Cinema would have to give the City a portion of the Subject Property at no cost so that it could be made into a community center, named after Commissioner Burrie." *Id*. at ¶ 15. Club Cinema refused this offer.

As a result of Club Cinema's refusal to gift the Subject Property, Plaintiff alleges that the City, alone and/or at the direction of Mayor Fisher and/or Commissioner Burrie, intentionally directed BSO to engage in an "official policy and a practice of excessive and unwarranted police activity at Club Cinema." *Id*. at ¶¶ 17, 22. The Complaint specifically details ten incidents in which Defendants apparently endorsed excessive police presence during events held at Club Cinema. These events transpired on the following dates: March 3, 2013; April 6, 2013; April 19, 2013; April 26, 2013; May 11, 2013; May 18, 2013; October 31, 2013; November 16, 2013; January 18, 2014; and March 1, 2014. *Id.* at ¶¶ 23-27, 29-34. The Complaint alleges that these dates are not an "exhaustive list of the excessive and unwarranted police activity" at the Subject

Property, and that the activity "continued into 2016." *Id.* at ¶ 35. The Complaint further alleges that the excessive police presence at the events caused a significant drop in concertgoers and a financial loss to Club Cinema. *See e.g.*, *id.* at ¶ 23.

The managers of Club Cinema then met with Commissioner Burrie. *Id.* at ¶ 40. The Club Cinema managers explained to Commissioner Burrie that under the provisions of the City's Code, they believed Club Cinema could operate until 4:00 a.m. *Id.* at ¶ 41. Commissioner Burrie allegedly did not dispute this fact but rather

> reiterated the demand that if Club Cinema wanted to operate without excessive and unwarranted police activity, then Club Cinema had to close earlier than allowed by the City Code and had to donate a portion of the Subject Property for a community center named after Commissioner Burrie.

*Id.*

When the managers of Club Cinema met with Mayor Fisher, he allegedly admitted to being aware of, and directing, the actions of the BSO and Captain Adkins, Mayor Fisher's longtime personal friend. *Id*. at ¶ 44. Mayor Fisher indicated that the demand that Club Cinema close earlier than required was made "so that the City Commissioners could remain popular with the voting population." *Id.* at ¶ 46. The Complaint alleges that Mayor Fisher was "adamant that Club Cinema would continue to be targeted with excessive police activity until the venue agreed to close early." *Id.* at ¶ 47. Club Cinema documented its meetings, and numerous instances of unwanted police presence at Club Cinema in a "letter which he sent on June 13, 2013 to Robert Pereira, who was the campaign fundraiser for Sheriff Israel and who was appointed to the Board of Advisors for the County." *Id.* at ¶ 48.

At another meeting with Commissioner Burrie, Club Cinema suggested it would support another mayoral candidate (opposing Mayor Fisher) in an upcoming election if the unwarranted police presence did not stop. *Id.* at ¶ 50. Commissioner Burrie is alleged to have replied that "no

one would oppose her lifelong friend, Mayor Fisher," and that she was "furious that they had not done what she wanted as to the community center." *Id.* at ¶ 51. The Complaint alleges that Commissioner Burrie then indicated that if the Club Cinema managers would not support Mayor Fisher for re-election that the "excessive police activity would not stop until Club Cinema was finally out of business." *Id.* at ¶ 51.

On November 6, 2013, Plaintiff sent substantially the same cease and desist letter to six different recipients. *See* ECF Nos. [1-4], [1-5], [1-6], [1-7], [1-8], [1-10]. (collectively referred to as the "C&D Letters"). The recipients of the C&D Letters included: (1) Mark Berman, Esq. of the Pompano Beach City Attorney's Office (ECF No. [1-4]); (2) Gordon Linn, Esq. of the Pompano Beach City Attorney's Office (ECF No. [1-5]); (3) Dennis Beach, the City Manager of Pompano Beach (ECF No. [1-6]); (4) Mayor Fisher (ECF No. [1-7]); (5) Vice-Mayor George Brummer (ECF No. [1-8]); and (6) the Sheriff of Broward County, Sheriff Scott Israel (ECF No. [1-10]).

In the Complaint, Plaintiff states that the C&D Letters "demanded that the harassment of [Club Cinema] stop, specifically referring to the fact that the City directed the BSO[], and the BSO[] carried out, police details at Club Cinema which significantly impaired Club Cinema's ability to conduct business." *Id.* at ¶ 60. The C&D Letters further ordered that the Defendants cease their alleged wrongful actions against Club Cinema, cease any police presence anywhere on the Club Cinema property, and prohibited any police officers from entering the presence while on duty. *See e.g.*, ECF No. [1-10]. The C&D Letters specifically stated that Club Cinema was "demanding that the harassment of Club Cinema immediately stop." *See generally*, ECF Nos. [1-4], [1-5], [1-6], [1-7], [1-8], and [1-10]. The C&D Letters also referenced the conduct complained of that gives rise to facts in Plaintiff's Complaint. *See generally*, ECF Nos. [1-4], [1-5], [1-6], [1-7], [1-8], and [1-10].

Plaintiff alleges that Defendants' actions constitute violations of Plaintiff's First and Fourteenth Amended rights, which are actionable under 42 U.S.C. § 1983. *Id.* ¶¶ 74, 118, 175, 216. Defendants now seek dismissal of the Complaint pursuant to Rule 12(b)(6) for failure to state a claim. In the Motions, and among other grounds, Defendants assert that Plaintiff's claims are barred by the applicable statute of limitations. ECF Nos. [30], at 4-5; [33], at 3-5; [39], at 4-5.

## II. Legal Standard

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."

*Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) ("'[U]nwarranted deductions of fact' in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations."). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).

"At the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations defense only if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute." *Keira v. U.S. Postal Inspection Serv.*, 157 Fed.Appx. 135, 136 (11th Cir. 2005) (internal quotation marks and citation omitted). "A statute of limitations bar is an affirmative defense, and plaintiffs are not required to negate an affirmative defense in their complaint." *La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (internal citations and quotations omitted). "[A] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time barred." *Id.* "Generally, whether a claim is barred by the statute of limitations should be raised as an affirmative defense in the answer rather than in a motion to dismiss . . . However, if facts on the face of the pleadings show that the statute of limitations bars the action, the defense can be raised by motion to dismiss." *Spadaro v. City of Miramar*, 855 F. Supp. 2d 1317, 1328 (S.D. Fla. 2012) (citing Cabral v. City of Miami Beach, 76 So.3d 324, 326 (Fla. 3d DCA 2011).

## III. DISCUSSION

Defendants contend that all of Plaintiff's § 1983 claims are barred by a four-year statute of limitations, which began to run in 2013. ECF Nos. [30], at 4-5; [33], at 3-5; [39], at 4-5. Plaintiff agrees that a four-year statute of limitations applies. ECF No. [40], at 2. However, Plaintiff contends that its claims are not time-barred because the Complaint alleges that the conduct "continued into 2016, well within the four-year statute of limitations," and "[b]ecause each discrete discriminatory act starts a new clock for filing charges alleging that act." ECF No. [40], at 5. Plaintiff further argues that it is

> not precluded from seeking recovery for injuries sustained from March, 2013 to the present, prior to the expiration of the four-year statute of limitations, nor does it preclude plaintiff from claiming the March, 2013 incident as part of the cumulative effect of individual acts over time, or from using the prior act as background evidence in support of their timely claims.

*Id.* Plaintiff concedes that the question of when the statute of limitations begins to run hinges on the question "when did the facts that support the claim become apparent?" ECF No. [40], at 2. In the Replies filed by Defendant City, ECF No. [43], and Defendants Sheriff Israel and Captain Adkins, ECF No. [44], Defendants respond that the Complaint clearly demonstrates that the facts supporting Plaintiff's claims became apparent on November 6, 2013, as evidenced by Plaintiff's C&D Letters, which are attached as exhibits to the Complaint. ECF Nos. [43], at 1-2; [44], at 2.

The statute of limitations applicable to a § 1983 action is the personal injury statute of limitations prescribed by the state in which the action arose. *Wilson v. Garcia*, 471 U.S. 261 (1985); *Grace v. Wainwright*, 761 F.Supp. 1520, 1526 (M.D. Fla. 1991). Florida's four-year statute of limitations applies to claims of deprivation of rights under 42 U.S.C. § 1983. *See City of Hialeah v. Rojas*, 311 F.3d 1096, 1102 n. 2 (11th Cir. 2002) ("Section 1983 claims are governed by the forum state's residual personal injury statute of limitations, which in Florida is four years.").

The statute of limitations begins to run when the plaintiff knows or should know: (1) that he has suffered the injury that forms the basis of his complaint; and (2) who has inflicted an injury. *Chappell v. Rich*, 340 F.3d 1279, 1281, 1283 (11th Cir. 2003).

To the extent that Plaintiff argues that because the Complaint alleges that the actionable conduct "continued" into 2016 somehow preserves otherwise time-barred claims, the Court rejects such argument. In *Rager v. Augustine*, the Eleventh Circuit Court of Appeals denied the application of the continuing violation doctrine, finding that the doctrine does not apply where a "[party] was aware that he incurred harm at the time each harmful act took place." *Rager v. Augustine*, No. 18-10834, 2019 WL 413750, at *3 (11th Cir. Feb. 1, 2019) (citing *Hipp*, 252 F.3d at 1222). The continuing violation doctrine only permits a plaintiff to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1221–22 (11th Cir. 2001). The purpose of permitting a plaintiff to maintain a cause of action on the continuing violation theory, however, is to permit the inclusion of acts whose character as discriminatory acts *was not apparent* at the time they occurred. No such facts are present here.

Here, of the ten instances that Plaintiff alleges the Subject Property was subject to excessive policing by the BSO, seven of them occurred by October 2013. ECF No. [1], at ¶¶ 23-27, 29-30. Plaintiff sent the C&D Letters on November 6, 2013. *Id.* at ¶¶ 55-59. Thus, it is apparent from the face of the Complaint and the attached exhibits that Plaintiff **was aware** of the harm incurred as it related to these events by November 6, 2013. *See* ECF Nos. [1-4], [1-5], [1-6], [1-7], [1-8], and [1-10]. In addition to the attachment of the C&D Letters themselves, Plaintiff affirmatively states the following in its Complaint:

> As set forth in the November 6, 2013 letters to the City, Club Cinema demanded that the harassment of it stop, specifically referring to the fact that the City directed

> the BSOC, and the BSOC carried out, police details at Club Cinema which significantly impaired Club Cinema's ability to conduct business . . . In the November 6, 2013 letters to the City, Club Cinema advised the City that it was aware that the City had directed the BSOC, and the BSOC carried out, warrantless entries into Club Cinema's building by entering the building after purchasing a ticket which was intended for the club patrons only, and demanded that such warrantless entries cease (Exhibits 3-7).

ECF No. [1], at ¶¶ 60-61. Based on these allegations, it was apparent to the Plaintiff at the time the C & D Letters were sent of the harm that resulted from the alleged excessive policing that transpired prior to November 2013. Further, the Eleventh Circuit Court of Appeals has also made clear that

> [e]ven if the continuing violation doctrine could be read broadly enough to preserve otherwise stale claims . . . allowing it to save [a plaintiff's] claim in this case would contravene the doctrine's purpose. The continuing violation doctrine is premised on "the equitable notion that the statute of limitations ought not to begin to run until facts supportive of the cause of action are or should be apparent to a reasonably prudent person similarly situated."

*Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1221–22 (11th Cir. 2001) (holding that the continuing violation doctrine did not apply where a plaintiff was aware that he incurred harm at the time each harmful act took place). Here, Plaintiff has asserted that on ***no less than ten occasions*** its events were subject to unauthorized and unwarranted police presence. And further that such activity was the result of a retaliation for the Defendants' refusal to close its business early and donate a part of the Subject Property for the community center. A reasonably prudent person in Plaintiff's position would have possessed all the facts needed to support Plaintiff's claims starting on any of the dates the alleged instances of excessive policing occurred. Thus, this case is not appropriate for the application of the continuing violation doctrine.

Plaintiff's second argument that "each discrete discriminatory act starts a new clock for filing charges alleging that act" and that dismissal of the Complaint would therefore be improper also lacks merit when applied to the allegations of its Complaint. As for the instances of alleged

excessive policing that occurred after the C&D Letters were sent, Plaintiff alleges that these events occurred on November 16, 2013, January 18, 2014, and March 1, 2014. ECF No. [1], at ¶¶ 31-34. Even applying this argument to the allegations in the Complaint, every specific allegation would be barred by the statute of limitations. In the Complaint, the last incident of alleged "unwarranted police activity" occurred on March 1, 2014. ECF No. [1], at ¶ 34. Accordingly, Plaintiff's own argument supports that it was required to bring an action on this specific event no later than March 1, 2018. Plaintiff filed this lawsuit on November 9, 2018, eight months after the statute of limitations had run.

The Court also notes that all authority relied upon by Plaintiff in its Responses to the Motions is derived from cases concerning employment-based claims, not § 1983 actions. ECF No. [40], at 2-4. Plaintiff relies on two cases to support its proposition that its § 1983 claims are not barred by the statute of limitations, *Maggio v. Dep't of Labor & Employment Sec.*, 910 So. 2d 876 (Fla. 2d DCA 2005) and *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). ECF No. [40], at 2-4. Both cases are inapposite to the instant action.

In *Maggio v. Dep't of Labor & Employment Sec.*, the plaintiff sued the Department of Labor and Employment for violations of the Florida Civil Rights Act for employment discrimination relating to the plaintiff's physical handicap. *Maggio*, 910 So. 2d at 878. In that case, the Second District Court of Appeal held that different accrual dates applied concerning the statute of limitations related to the plaintiff's claims of acts of discrimination and the defendant's creation of a hostile work environment. *Id.* at 879. Specifically, the Florida Second District Court of Appeal held that

> a hostile work environment claim is different from a claim for a discrete act of discrimination because the unlawful practice that results in a hostile work environment cannot be said to have occurred on a specific day; rather, it occurs over a period of time. Moreover, a hostile work environment claim is based on the

cumulative effect of several individual discriminatory acts. The Supreme Court concluded that if the complainant could allege a single discrete act of discrimination that occurred within the statutorily defined time period, the claim for hostile work environment could be prosecuted and the incidents that occurred outside the limitations period could be included in the claim as evidentiary support for the hostile work environment claim.

*Id.*

The *Maggio* Court relied heavily on *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). *Maggio*, 910 So. 2d at 879-880. In *Nat'l R.R. Passenger Corp.*, a former employee brought an action against a railroad company for racial discrimination and retaliation under Title VII. *Nat'l R.R. Passenger Corp.*, 536 U.S. at 103. In that case, the Supreme Court specifically held that any discrete discriminatory act, such as termination or failure to hire, which occurred more than 300 days *prior* to filing the EEOC charge was time barred. *Id.* at 114 ("Because Morgan first filed his charge with an appropriate state agency, only those acts that occurred 300 days *before* February 27, 1995, the day that Morgan filed his charge, are actionable.") (*emphasis added*). The Court further explained, that

> [h]ostile work environment claims are different in kind from discrete acts. Because their very nature involves repeated conduct, the 'unlawful employment practice' § 2000e–5(e)(1), cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own . . . Determining whether an actionable hostile environment claim exists requires an examination of all the circumstances . . . Because such a claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice,' it does not matter that some of the component acts fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered for the purposes of determining liability.

*Id.* at 10.

The Court first notes that *Maggio* and *Nat'l R.R. Passenger Corp.*, do not concern § 1983 claims, but rather employment discrimination and Title VII claims. Further, both the *Maggio* and *Nat'l R.R. Passenger Corp.* Courts reasoned that a hostile work environment claim is timely where

11

one of the events is alleged to have occurred within the statutory period, even if other claims would be otherwise be time-barred because a hostile work environment claim is "composed of a series of separate acts." *Nat'l R.R. Passenger Corp.*, 536 U.S. at 103. A single act alleged by a party will most likely not create a hostile work environment claim because the claim itself requires a series of events to have occurred to place a party on notice of such a claim. Here, the claims at issue in the instant lawsuit are entirely different than the employment discrimination claims alleged in *Maggio* and *Nat'l R.R. Passenger Corp.* The Court, therefore, rejects Plaintiff's invitation to allow it to proceed with clearly time-barred claims. To do so would be to defeat the purpose of the statute of limitations.

The Court finds that any allegation that is alleged to have occurred prior to November 9, 2014, is barred by the statute of limitations. Because the Complaint makes clear that Plaintiff was aware of the conduct alleged and its injury on November 6, 2013, and/or by March 1, 2014, Plaintiff was required to file its lawsuit no later than March 1, 2018.

Lastly, while the Complaint states that the "list of dates and incidents is not an exhaustive list of the excessive and unwarranted police activity . . . as that activity continued through 2016," it is otherwise *completely devoid* of any factual allegations of events that occurred at any time prior to the expiration of the statute of limitations. ECF No. [1], at ¶ 35. After a careful review of the Complaint, the Court notes that all the specific factual allegations in the Complaint relate to time-barred claims. Plaintiff's naked and conclusory allegation that the conduct "continued" into 2016, without more, is plainly insufficient. To the extent that Plaintiff can assert claims that are not barred by the statute of limitations, the Court will grant the Plaintiff leave to amend the Complaint.

In addition to arguing that Plaintiff's claims are barred by the applicable statute of limitations, Defendants Sheriff Israel and Captain Adkins have moved to strike Plaintiff's

inclusion of "punitive and/or 'exemplary' damage claims" against Sheriff Scott Israel in his official capacity. ECF No. [33], at 5. Defendants Sheriff Israel and Captain Adkins argue that these kinds of damages are not recoverable against a municipality or local government authorities under § 1983. *Id.* Plaintiff concedes that it cannot recover these kinds of damages against the Sheriff in his official capacity. ECF No. [41], at 4. Accordingly, the Court will grant the Motion to Strike. Plaintiff's claims of punitive and/or exemplary damages relating to Sheriff Israel *in his official capacity* is stricken from the Complaint.

## IV. CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant City's Motion to Dismiss, **ECF No. [30]**, is **GRANTED**.

2. Defendants Sheriff Israel and Captain Adkins' Motion to Dismiss and Motion to Strike, **ECF No. [33]**, is **GRANTED**.

3. Plaintiff's claims for punitive and/or exemplary damages as they relate to Sheriff Scott Israel *in his official capacity* are **STRICKEN** from the Complaint.

4. Defendants Fisher and Burrie's Motion to Dismiss, **ECF No. [39]**, is **GRANTED**.

5. The Complaint, **ECF No. [1]**, is **DISMISSED WITHOUT PREJUDICE**.

6. Plaintiff shall file its Amended Complaint **no later than April 8, 2019**.

**DONE AND ORDERED** in Miami, Florida, this 27th day of March, 2019.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record